**William H. HINTON**

v.

**FEDERAL BUREAU OF INVESTIGATION and William Webster, Director, Federal Bureau of Investigation.**

**No. 81–740.**

United States District Court, E. D. Pennsylvania.

Nov. 23, 1981.

Jack Levine, Philadelphia, Pa., for plaintiff.

Richard Stout, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

TROUTMAN, District Judge.

Plaintiff, William Hinton, whose widely-read and informative book *Fanshen* chronicles life in the Chinese village of Long Bow during that country's revolution, brings this action pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, to compel disclosure of all records in the custody of defendant, Federal Bureau of Investigation (FBI), which relate to his activities over a thirty-year period. Having exhausted applicable administrative remedies, as a prerequisite to the institution of suit, plaintiff argues that defendant's failure to comply with the time limits within which the requested documents must be made available, 5 U.S.C. § 552(a)(6)(A)(i) and (ii), warrants entry of summary judgment in his favor. *See* Fed.R.Civ.P. 56. Defendant, resisting plaintiff's motion for summary judgment and contemporaneously moving for a stay, asserts that the 264 full-time employees assigned to process FOIA requests confront a substantial backlog of work. Furthermore, defendant stresses that plaintiff's 21,000 pages of requested documents must be reviewed on a

line-by-line basis to determine whether the privacy of third parties, the existence of classified data or other matter requires excising portions of the material prior to release. Arguing that its "first-in, first-out" method of processing FOIA requests ought not to be disturbed, defendant pleads for an extension of time within which to complete its review of the documents and asserts that plaintiff should "stand in line" behind other FOIA requesters confronting a similar backlog. Neither party, however, suggests an appropriate middle ground, a solution which maximizes citizen rights under the FOIA while properly protecting the government's legitimate interests. Such a "middle ground" can be reached by the "timed" release of documents.

5 U.S.C. § 552(a)(6)(C) provides in relevant part that

[i]f the government can show *exceptional circumstances* exist and that the agency is exercising *due diligence* in responding to the request, the court *may* retain jurisdiction and allow the agency additional time to complete its review of the records.

(emphasis added). *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C.Cir.1976) held that "exceptional circumstances" exist when an agency is "deluged with a volume of requests for information ... and existing resources are inadequate to deal" with them within the time limits mandated by Congress. Characterizing the "exceptional circumstances" clause as a "safety valve", the court stated that its inclusion in the Act contemplates situations where the agency, claiming exercise of "due diligence", finds it impossible to respond within the statutory time limit for reasons other than those delineated in applicable sub-sections. *See* 5 U.S.C. § 552(a)(6)(B)(i), (ii) and (iii). In such cases the Court must pass upon the government's claim of "exceptional circumstances" and "due diligence". Once these have been made out, plaintiff must then show "a genuine need and reasons for urgency" in seeking expedited consideration of his request. *Id.* 610–12.

Plaintiff, however, argues that the Court should be guided by *Exner v. Federal Bureau of Investigation*, 542 F.2d 1121 (9th Cir. 1976) and *Hamlin v. Kelley*, 433 F.Supp. 180 (N.D.Ill.1977), both of which rejected *Open America's* holding. Alternatively, and by implication, plaintiff asserts that he has shown a genuine need for urgently gaining access to said records ahead of other requesters. Importantly, the parties do not appear to dispute that defendant, an agency facing a substantial backlog, although diligently handling plaintiff's request, will not have completed its review until January, 1983. Hence, the two questions confronting the Court are whether "exceptional circumstances" may legally include instances wherein an agency's backlog of requests and understaffing of personnel make it impossible for it to comply with the FOIA's time limits; or, whether plaintiff, by virtue of instituting suit, may have his request processed ahead of all prior requesters.

True, plaintiff's argument, accepted *in toto*, allows those filing suit, to automatically go to the "head of the line" at the agency; one court characterized this as a "pernicious result" since information is thereby released "based on the priority of lawsuits, i.e. first into court, first out of the agency". *Open America v. Watergate Special Prosecution Force*, 547 F.2d at 605. The outcome would, of course, be no different than current procedures whereby information is delivered in the order in which it is requested. Plaintiff's heavy reliance on *Exner v. Federal Bureau of Investigation, supra*, the only Circuit Court other than *Open America* to address this issue, is admittedly undercut by that court's equivocal holding that filing a suit "can (*but does not necessarily*) move petitioner 'up the line', i.e. create a preference". *Exner v. Federal Bureau of Investigation*, 542 F.2d at 1123. (emphasis added). As such, even if we followed *Exner*, plaintiff would not "necessarily" and certainly not *automatically* be entitled to the relief which he seeks. The *Exner* court held, however, under facts similar to those currently at bar, that "exceptional circumstances" are not *always* made out by

claims of administrative hardship and backlog.

We believe that none of the cases, *Open America, Exner,* or *Hamlin* evidence sufficient concern of the rights delineated under the statute and attaching to both parties. The timed, "piecemeal" and orderly release of the requested documents protects the government's right to review them on a line-by-line basis and to withhold those documents which it legally need not produce. The timed release also gives plaintiff those documents which he needs in order to meet his contractual obligations. Given the fact that the FOIA seeks to ensure disclosure of information, rather than its suppression, *Department of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976); *Joseph Horne Co. v. National Labor Relations Board,* 455 F.Supp. 1383 (W.D.Pa.1978); and that all of the Act's exemptions are to be narrowly construed, *Kuehnert v. FBI,* 620 F.2d 662, 665 (8th Cir. 1980), we simply see no reason why plaintiff should have to wait until defendant has completed review of all and necessarily the *last* requested document before he may obtain the *first* requested and reviewed document. This is particularly true since defendant is presumably engaged in an on-going review of plaintiff's documents. Once the first documents have been reviewed and "cleared", plaintiff's access thereto should not be improperly impaired. Accordingly, we will order that plaintiff specify those categories of documents which he considers to be of a "priority" nature and direct that defendant shall, in considering plaintiff's request, initially direct its attention to those specified documents. Moreover, defendant shall, in an appropriate manner, release to plaintiff all "cleared" documents at 90-day intervals in accordance with the plaintiff's list of priorities. An appropriate order will issue.